IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| HAMMON PRATT, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>SC REALTY SERVICES, INC.<br><br>    Defendant. | :<br>:<br>:<br>:<br>:<br>:  No. 4:22-cv-286-KGB<br>:<br>:<br>: |

**COLLECTIVE ACTION SETTLEMENT AGREEMENT
AND RELEASE OF CLAIMS**

   This Collective Action Settlement Agreement and Release of Claims (the "Agreement" or "Settlement") is entered into by and between Plaintiff Hammon Pratt (the "Named Plaintiff"), on behalf of himself and the Opt-in Plaintiffs (as defined below), and by Defendant SC Realty Services, Inc. ("SCR" or "Defendant") (as defined below).

**RECITALS AND BACKGROUND**

   WHEREAS, the Named Plaintiff filed a lawsuit captioned *Hammon Pratt, individually and on behalf of others similarly situated, v. SC Realty Services, Inc.*, Case No. 4:22-cv-286-KGB, presently pending in the United States District Court for the Eastern District of Arkansas, asserting claims under the Fair Labor Standards Act ("FLSA"), on behalf of Named Plaintiff and others similarly situated, and the Arkansas Minimum Wage Act ("AMWA"), on behalf of Named Plaintiff individually, alleging unpaid minimum wages and overtime wages (the "Litigation");

   WHEREAS, on November 30, 2022, the Court granted in part and denied in part Named Plaintiff's Motion for Conditional Certification and conditionally certified an FLSA collective defined as follows: "all janitors employed by SC Realty Services, Inc. in Arkansas since March 28, 2019." (Doc. 29);

   WHEREAS, on or about December 14, 2022, the Plaintiff's Counsel sent a Notice of Right to Join Lawsuit to the putative members of the FLSA collective action;

   WHEREAS, a total of 597 individuals submitted "Consent(s) to Join Collective Action" (the "Opt-in Plaintiffs");

   WHEREAS, Defendant denies: (1) all of the material allegations made in the Litigation; (2) that it violated any applicable laws; or (3) that it is liable for damages, penalties, interest, restitution, attorney's fees, or for any other compensation or remedy to anyone with respect to the alleged facts or causes of action asserted in the Litigation;

WHEREAS, without admitting or conceding that collective certification is or was appropriate or warranted, and further without acknowledging or conceding any liability or damages whatsoever, without admitting that any wages or overtime amounts were improperly calculated or withheld from any employees, and without admitting any violation of the FLSA or AMWA or entitlement to liquidated damages or any wrongdoing whatsoever, Defendant agrees to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of further Litigation;

WHEREAS, Plaintiffs' Counsel has conducted a thorough investigation and evaluation of the disputed facts, the merits of the claims made in the Litigation, including the viability of maintaining an FLSA collective action on behalf of all Opt-in Plaintiffs, and defenses asserted by Defendant, the production of relevant documentation and data from Defendant, and has concluded this Agreement is in the best interests of the Named Plaintiff and the Opt-In Plaintiffs.  Having considered the benefits of this Agreement for the Named Plaintiff and the Opt-In Plaintiffs, based upon the analysis and evaluation of a number of sharply disputed facts, and having recognized the substantial risks of litigation, including the possibility that the Litigation, if not settled now, might not result in any individual or collective recovery whatsoever, or might result in a recovery that is less favorable or that may not realize any benefit for several years, Plaintiffs' Counsel and Named Plaintiff are satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate, and that this Agreement serves the best interests of the Named Plaintiff and the Opt-In Plaintiffs;

WHEREAS, the Parties have engaged in private settlement discussions among their counsel and their respective clients, with a view toward achieving fair, reasonable and adequate benefits for the Named Plaintiff and the Opt-In Plaintiffs, while avoiding the cost, delay, and uncertainty of further litigation;

WHEREAS, the Parties have agreed to settle the Litigation as to the Named Plaintiff and twenty (20) Opt-in Plaintiffs who are similarly situated to the Named Plaintiff (the "Participating Opt-in Plaintiffs") (*see* **Exhibit 1**, attached hereto);

WHEREAS, the purpose of this Agreement is to settle fully and finally all factual and legal disputes and Claims (as defined below) between the Named Plaintiff, all Participating Opt-In Plaintiffs, and Defendant and Releasees (as defined below), including all claims asserted in the Litigation; and

WHEREAS, the Parties agree to urge approval by the Court of this Agreement after considering: (1) the factual and legal defenses to the claims asserted, which render uncertain the ultimate outcome of the Litigation; (2) the potential difficulties the Named Plaintiff and the Opt-In Plaintiffs would encounter in establishing their claims and maintaining treatment as a collective action; (3) the substantial benefits that the Named Plaintiff and the Participating Opt-In Plaintiffs would receive under this Agreement; (4) this Agreement provides the Named Plaintiff and the Participating Opt-In Plaintiffs relief in an expeditious and efficient manner, compared to any manner of recovery after litigation and potential appeal; and (5) the claims of the non-Participating Opt-in Plaintiffs will be dismissed without prejudice so that they may individually pursue the claims alleged in the Litigation.

Doc ID: 034463d18749fd3afebd3cf74dd6b7b03f78c01e

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the receipt and sufficiency of which is hereby acknowledged by the Named Plaintiff, on behalf of himself and the Participating Opt-in Plaintiffs, the Parties agree to a full and complete settlement of the claims of the Named Plaintiff and the Participating Opt-in Plaintiffs asserted in the Litigation on the following terms and conditions:

**1. DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

**1.1.** **"Agreement"** means this Collective Action Settlement Agreement and Release of Claims, which includes all Recitals herein and all Exhibits attached hereto.

**1.2.** **"Approval Order"** means the Order entered by the Court granting approval of the settlement of this Litigation.

**1.3.** **"Claims"** shall include all FLSA Claims (as defined below), and all State Law Claims (as defined below) made in or which could have been included in the Litigation.

**1.4.** **"Court"** means the United States District Court for the Eastern District of Arkansas.

**1.5.** **"Days"** means calendar days.

**1.6.** **"Defendant" or "SCR"** means Defendant SC Realty Services, Inc.

**1.7.** **"Defense Counsel"** means James C. Sullivan, Esq., Fisher & Phillips 4622 Pennsylvania Ave., Suite 910, Kansas City, MO 64112.

**1.8.** **"Effective Date"** means the first day after the date on which the Court approves this Agreement.

**1.9.** **"FLSA Claims"** means all minimum wage and overtime claims and all other claims related to the payment of wages pursuant to 29 U.S.C.A. §§ 201 *et seq.* (the "Fair Labor Standards Act") that were or could have been asserted in the Litigation.

**1.10.** **"Litigation"** means the lawsuit filed by the Named Plaintiff, captioned *Hammon Pratt, individually and on behalf of others similarly situated, v. SC Realty Services, Inc.*, Case No. 4:22-cv-286-KGB, presently pending in the United States District Court for the Eastern District of Arkansas, asserting claims under the Fair Labor Standards Act ("FLSA"), on behalf of the Named Plaintiff and others similarly situated, and the Arkansas Minimum Wage Act ("AMWA"), on behalf of the Named Plaintiff individually, alleging unpaid minimum wages and overtime wages.

**1.11.** **"Named Plaintiff"** means Plaintiff Hammon Pratt.

Doc ID: 034463d18749fd3afebd3cf74dd6b7b03f78c01e

1.12. **"Non-Participating Opt-in Plaintiffs"** means Opt-in Plaintiffs who submitted a Notice of Consent to Join who are not a Participating Opt-in Plaintiffs. Plaintiff's Counsel will withdraw these individuals' Consent to Join from the Litigation within three (3) days of complete execution of this Agreement.

1.13. **"Opt-in Plaintiffs"** means those individuals on whose behalf a Consent to Join Collective Action was filed in the Litigation.

1.14. **"Party"** means the Named Plaintiff, Participating Opt-In Plaintiffs, or Defendant, singularly.

1.15. **"Participating Opt-in Plaintiff(s)"** means those Opt-in Plaintiffs who are eligible to receive a Settlement Award under this Agreement as set forth in **Exhibit 1** attached hereto. Participating Opt-in Plaintiffs acknowledge that they agree to settle all FLSA Claims and all State Law Claims, as defined herein.

1.16. **"Parties**." The Parties shall mean the Named Plaintiff, the Participating Opt-In Plaintiffs, and Defendant collectively.

1.17. **"Plaintiffs' Counsel"** means Sean Short, Esq., and Josh Sanford, Esq., Sanford Law Firm, PLLC, 10800 Financial Centre Parkway, Suite 510, Little Rock, Arkansas 72211.

1.18. **"Released Parties"** means SC Realty Services, Inc. and any related entities, along with all respective owners, members, stockholders, directors, officers, employees, agents, representatives, attorneys, parent companies, divisions, subsidiaries, affiliates, franchisors, predecessors, successors, assigns, insurers, insurance carriers, and all persons acting by, through, under, or in concert with any of them.

1.19. **"Service Award."** Service Award means the payment made from the Settlement Amount to the Named Plaintiff for his services in bringing and prosecuting the Action.

1.20. **"Settlement"** means the settlement of the Lawsuit pursuant to the terms of this Agreement.

1.21. **"Settlement Amount"** means the amount of $20,000.00, which Defendant has agreed to pay to fully resolve and settle the Litigation as to any and all claims of and amounts to be paid to or on behalf of the Named Plaintiff and the Participating Opt-In Plaintiffs, and any claim for attorneys' fees and costs approved by the Court. Under no circumstances will Defendant be required to pay more than the gross total of $20,000.00.

1.22. **"Settlement Award"** means the Named Plaintiffs' and each Participating Opt-in Plaintiff's share of the Settlement Amount as set forth in **Exhibit 1** attached hereto.

1.23. **"Settlement Checks."** The Settlement Checks shall mean the checks issued to the Named Plaintiff and/or Participating Opt-in Plaintiffs in accordance with this

        Agreement. Settlement Checks shall include release language from this Agreement.

**1.24.** **"State Law Claims."** State Law Claims shall mean claims for minimum wage, overtime, prevailing wage, failure to provide proper wage statements, failure to provide proper wage notices, and all other claims related to the payment of wages under the Arkansas Minimum Wage Act ("AMWA") or any other state and local law(s) that were or could have been asserted in the Litigation.

**2.** **INITIAL PROCEDURAL ISSUES**

  **2.1.** **Binding Agreement.** This Agreement is a binding agreement and contains all material agreed-upon terms between the Parties.

  **2.2.** **Filing of Settlement Approval Motion:**

    (A) Plaintiffs' Counsel shall prepare the Joint Motion for Approval of Settlement ("Approval Motion") and a proposed Approval Order. Once they are finalized, the Parties shall file the Approval Motion. In connection with the Approval Motion, the Parties will submit this Agreement to the Court and the proposed Approval Order.

    (B) In the Approval Motion, the Parties will request that the Court: (1) approve this Agreement as fair and reasonable; (2) approve the Service Award payment to the Named Plaintiff and the Settlement Award payments to Named Plaintiff and Participating Opt-In Plaintiffs in accordance with the terms of this Agreement in the amounts set forth in Exhibit 1; (3) award Plaintiffs' Counsel attorneys' fees and costs not to exceed to amounts set forth in Section 2.3; (4) dismiss the Claims of the Participating Opt-in Plaintiffs with prejudice; and (5) retain jurisdiction and order the clerk to keep the case open until forty-five (45) days after the Effective Date.

    (C) If the Court declines to enter an Order approving the settlement, the Parties agree to negotiate in good faith terms for a revised settlement, for a period of up to 21 days from the denial of approval. If the Parties do not jointly agree to seek reconsideration or appellate review of the decision, or reach final agreement on the terms of a revised settlement, then this Agreement and any settlement documents executed in conjunction with this settlement will become null and void *ab initio*. In such an event, the Litigation shall resume as if no settlement existed. At that point, Defendant may contest whether this litigation should be proceed as a collective action and contest the merits of the claims being asserted by the Named Plaintiff and the Opt-in Plaintiffs in this action. In the event settlement is not approved, this Agreement and any settlement documents executed in conjunction with this settlement will not be used for any purpose in connection with the litigation, any future litigation, or any other lawsuit, administrative or other legal proceeding, claim, investigation, or complaint, except that the

confidentiality obligations will remain in effect.

2.3 **Plaintiffs' Counsel's Attorneys' Fees and Costs:**

(A) In the Approval Motion, Plaintiffs' Counsel will seek an award of attorneys' fees in the amount of $7,338.83 and actual costs of $7,658.48, for a total award of attorneys' fees and costs in the amount of $14,997.31. Defendant will not oppose this application.

(B) The substance of Plaintiffs' Counsel's request for attorneys' fees and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Plaintiffs' Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the approval of the underlying settlement. Any attorneys' fees and/or costs not approved by the Court shall revert to Defendant.

2.4. **Cooperation:** The Parties will cooperate to effectuate the Settlement and secure the Court's approval of the Settlement.

3. **Settlement Terms and Administration**

3.1 **Settlement Amount:** Defendant agrees to pay the Settlement Amount of $20,000.00, which shall be the maximum amount necessary pursuant to the terms of this Agreement to fully resolve and satisfy (1) any and all amounts to be paid to or on behalf of the Named Plaintiff and the Participating Opt-In Plaintiffs as set forth in **Exhibit 1** hereto, and (2) any claim for attorneys' fees and costs approved by the Court. Under no circumstances will Defendant be required to pay more than the gross total of $20,000.00 under the terms of this Agreement.

3.2 **Funding of Settlement Amount:** Within thirty (30) days after the Effective Date, Defendant will deliver the following to Plaintiffs' Counsel:

(A) Settlement Checks made payable to the Named Plaintiff and the Participating Opt-ins for the Settlement Awards in the amounts set forth in **Exhibit 1** hereto, subject to the tax treatment discussed in Section 3.3 below;

(B) A check made payable to the Named Plaintiff (Hammon Pratt) for the Service Award in the amount of $1,600.00, subject to approval by the Court;

(C) A check made payable to Plaintiffs' Counsel for attorneys' fees and costs as approved by the Court.

(D) Defendant may include the following release language on the back of each Settlement Check or on the check stub:

Doc ID: 034463d18749fd3afebd3cf74dd6b7b03f78c01e

> My signature or negotiation of this check constitutes a full, final and complete release by me of SC Realty Services, Inc. and its parents, subsidiaries, successors, assigns and affiliated entities, and its officers, directors and employees, for any and all unpaid wages, overtime and minimum wage type claims, including those that were or could have been asserted or alleged on my behalf in the matter of *Hammon Pratt, individually and on behalf of others similarly situated v. SC Realty Services, Inc.*, Case No. 4:22-cv-286-KGB, presently pending in the United States District Court for the Eastern District of Arkansas, as well as my acknowledgement that I accept this check as payment in full for the Released Claims.

(E) Plaintiffs' Counsel shall be solely responsible for distributing the Settlement Checks to the Named Plaintiff and the Participating Opt-In Plaintiffs. Defendant shall provide Plaintiffs' Counsel with the last known address and contact information for the Participating Opt-In Plaintiffs. If, within 90 days of the checks' first mailing, Plaintiffs' Counsel requests a reissued check for a Plaintiff whose check has been lost or stolen, Defendant will reissue the check to Plaintiff's Counsel, limited to one (1) reissue per check.

**3.3    Tax Treatment:**

(A) For tax purposes, 50% of the Named Plaintiffs' and each Participating Opt-ins' Settlement Award shall be treated as back wages and 50% of such payments shall be treated as interest and/or liquidated damages.

(B) Payments treated as back wages pursuant to Section 3.3(A) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and Social Security Number on an IRS Form W-2.

(C) The Service Award and payments treated as interest and/or liquidated damages pursuant to Section 3.2(B) shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and Social Security Number on an IRS Form 1099.

(D) Payments of attorneys' fees and costs pursuant to the terms of this Agreement shall be made without withholding and reported to the IRS and the payee under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099.

(E) With the exception of employer-side payroll taxes, Named Plaintiff and Participating Opt-In Plaintiffs acknowledge and agree that they will be

        solely responsible for all taxes, interest and penalties due with respect to any payment received pursuant to this Agreement.

(F)     The Service Award payment to the Named Plaintiff shall be made without withholding and shall be reported to the IRS and the payee under the payee's name and Social Security Number on an IRS Form 1099.

**4.     Release:**

**4.1     Release of Claims and Covenant Not to Sue:**

(A)     Upon the Effective Date, the Named Plaintiff and each Participating Opt-in Plaintiff, on his or her behalf, and on behalf of his or her respective current, former and future heirs, spouses, assignees, executors, administrators, agents, and attorneys, fully releases and discharges Defendant, Defendant's present and former parent companies, subsidiaries, related or affiliated companies, subcontractors and their respective shareholders, officers, directors, employees, owners, members, managers, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns of Defendant and the aforementioned entities, and all persons or entities acting by, through, under or in concert with any of them, and any individual, including but not limited to former and future heirs, spouses, assignees, executors, administrators, agents, insurers and attorneys, or entity, which could be jointly liable with any of them (collectively, the "Releasees"), for any and all claims that were asserted or have been asserted based on the facts alleged in the Litigation and for any and all claims for any minimum wage and overtime wage-and-hour violations, any and all claims for unpaid wages and overtime wages, prevailing wages, delayed payment of wages, failure to maintain and furnish employees with proper wage notices, failure to provide true and accurate wage statements and record keeping violations, and all other claims related to the payment of wages, whether known or unknown, under state, and/or local wage-and-hour laws, through the Effective Date. This release includes all claims for all damages arising from any such released claims, including but not limited to all wages, claims for liquidated damages, interest, penalties and attorneys' fees and costs (collectively "Released Claims").

**4.2     No Assignment.** Plaintiff's Counsel and Named Plaintiff, on behalf of himself and the Participating Opt-in Plaintiffs, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any Released Claims or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**4.3     Non-Admission of Liability.** By entering into this Agreement, Defendant in no way admits any facts relating to alleged legal violations, any violation of law or any liability whatsoever to Named Plaintiff, the Participating Opt-In Plaintiffs, and/or the Non-Participating Opt-in Plaintiffs, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendant in no way admits to the suitability of this case for class or collective action litigation other than for purposes

Doc ID: 034463d18749fd3afebd3cf74dd6b7b03f78c01e

of Settlement. Rather, Defendant enters into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with the Named Plaintiff and the Participating Opt-in Plaintiffs. Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the Settlement: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendant or of the truth of any of the factual allegations in any and all complaints filed in the Litigation; and (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendant in any civil, criminal, administrative or arbitral proceeding. The Parties understand and acknowledge that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of this Agreement.

**4.4** **Covenant Not to Sue:** In addition to the above release, the Named Plaintiff and the Participating Opt-in Plaintiffs agree not to sue any or all of the Releasees in any forum for any claim covered by the releases in Section 4.1 except that they may bring a claim to enforce this Agreement. The Named Plaintiff and the Participating Opt-in Plaintiffs also agree not to participate in any class or collective action against any or all of the Releasees for any claim covered by Section 4.1 but the foregoing does not bar participation in such matters with regard to any claim not covered by Section 4.1.

**4.5** **Waiver of Attorneys' Fees and Costs:** Except as provided in this Agreement, upon payment of the attorneys' fees, expenses, and costs approved by the Court, Plaintiffs' Counsel and the Participating Opt-in Plaintiffs hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendant for attorneys' fees or costs associated with Plaintiffs' Counsel's representation in the Litigation for any claim covered by Section 4.1. Plaintiffs' Counsel further acknowledges that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees, expenses and costs associated with Plaintiffs' Counsel's representation in the Litigation and shall be paid solely from the Settlement Amount.

**5. Dismissal of Litigation:**

    **5.1** **Dismissal with Prejudice by Participating Opt-Ins:** Upon funding of the Settlement Amount by Defendant, Plaintiffs' Counsel, on behalf of the Named Plaintiff and the Participating Opt-in Plaintiffs, and Defendant Counsel shall file a Stipulation of Dismissal with Prejudice as to the Claims of the Named Plaintiff and the Participating Opt-in Plaintiffs.

    **5.2** **Dismissal Without Prejudice by Non-Participating Opt-Ins:** Plaintiff's Counsel will withdraw the Consent to Join of all Non-Participating Opt-In Plaintiffs from the Litigation within three (3) days of complete execution of this Agreement.

**6. NON-DISCLOSURE AND PUBLICITY.**

    **6.1.** Prior to submission of the Approval Motion, the Parties and their counsel will keep

the terms, conditions, and existence of the Settlement and this Agreement strictly confidential, and will not contact, or comment to, the media about the Settlement or this Agreement, or disclose, make known, discuss, or relay orally or in writing, electronically or otherwise, the existence or terms of the Settlement or this Agreement, or any information concerning or discussions leading up to the Settlement or this Agreement.  However, Plaintiffs' Counsel may communicate with the Named Plaintiff and the Opt-in Plaintiffs.

**6.2.** Named Plaintiff and Plaintiffs' Counsel agree not to make any public comment, press releases, communications to media, or any form of advertising or public announcement (including social media) regarding any part of the Settlement that identifies Defendant or this matter except as required to secure Court approval of the Settlement including filing documents with the Court.

**6.3.** Nothing in this Agreement shall prohibit Plaintiffs' Counsel or Defense Counsel from disclosing information concerning this Agreement to their employees, or their agents to effectuate the terms of this Agreement.  Moreover, nothing in this Agreement shall prohibit Defendant from disclosing information concerning this Agreement to their employees or agents to the extent necessary to effectuate the terms of this Agreement or to other individuals who otherwise have a need to know the terms of this Agreement.  The Parties, Plaintiffs' Counsel, and Defense Counsel may also disclose information concerning this Agreement to their respective counsel and tax, audit, and legal advisors.

**6.4.** Nothing in this Agreement shall prevent Defendant, Plaintiffs' Counsel, or Defense Counsel from making any necessary, appropriate, or required disclosures to government regulators, auditors, bankers, government agencies and the like, or from complying with their obligations under the law or the rules of professional conduct.

**6.5.** Nothing in this Agreement shall prevent any Party from disclosing to the extent necessary to enforce the Agreement.

**7. INTERPRETATION AND ENFORCEMENT**

**7.1. Cooperation Between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each Party, upon the request of any other Party, shall perform such further acts and shall execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**7.2. Entire Agreement.** This Agreement, together with all the exhibits attached hereto and incorporated by reference, constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and supersedes all prior and contemporaneous negotiations and understandings between the Parties.

Doc ID: 034463d18749fd3afebd3cf74dd6b7b03f78c01e

7.3. **Binding Effect.** This Agreement shall be binding upon the Parties and the successors of each of the Parties and, with respect to Plaintiffs, their representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

7.4. **Arms' Length Transaction.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length.

7.5. **Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon theconstruction or interpretation of any part of this Agreement.

7.6. **Construction.** The determination of the terms and conditions of this Agreement has beenby mutual agreement of the Parties. Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

7.7. **Severability.** If any provision of this Agreement (with the exception of the releases in Section 4) is held to be void, voidable, unlawful or unenforceable by a court of competent jurisdiction, the remaining portions of this Agreement will remain in full force and effect. Specifically, the invalidity of any such provision shall have no effect upon, and shall not impair the enforceability of, the release language set forth in Paragraph 4. If a court of competent jurisdiction finds that any of the release language found in Paragraph 4 is unenforceable, Defendant shall rewrite Paragraph 4 to cure the defect and Named Plaintiff agrees to re-execute the release upon request and that they shall not be entitled to any additional monies, benefits, and/or compensation therefor. Notwithstanding the foregoing, if the payment obligations contained in Paragraphs 3.1, 3.2, or 3.3 of this Agreement or the Releases and Covenant Not To Sue contained in Paragraph 4 are illegal, void or unenforceable, this Agreement and the promises contained in it shall automatically be null and void *ab initio*, at which time this Agreement shall terminate and no payments shall be required of Defendants.

7.8. **Governing Law; Continuing Jurisdiction.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Arkansas without regard to its choice of law provisions, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern. The Court shall retain jurisdiction over the implementation of this Agreement as well as any matter arising out of, or related to, the implementation of this Agreement. The Court shall not have jurisdiction to modify the terms of this Agreement without the consent of all Parties.

7.9. **Waivers and Modifications to Be in Writing.** No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court

Doc ID: 034463d18749fd3afebd3cf74dd6b7b03f78c01e

approval. Any failure by any Party to demand the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to demand the specific performance of any and all of the provisions of this Agreement.

**7.10.  Return of Documents/Data:**  Plaintiffs' Counsel will destroy all documents produced by Defendant and/or Defense Counsel (whether formally or for purposes of settlement discussions) and shall delete all electronic records thereof within thirty (30) days after distribution of the Settlement Checks as set forth in Section 3.2, except as required by Plaintiffs' Counsel's malpractice insurance and the Rules of Professional Conduct.

**7.11.  When Agreement Becomes Effective, Counterparts.**  This Agreement shall become effective upon its full execution and Approval by the Court and either (a) upon timely appeals, the United States Court of Appeals for the Second Circuit and/or the United States Supreme Court, has declined to consider, affirmed, or otherwise approved of the Court's Final Approval Order and the applicable date for seeking further appellate review has passed; or (b) the applicable date for seeking appellate review of the Final Approval Order has passed (and cannot be extended) without timely appeal or request for review having been made.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**7.12.  Facsimile, Email and Electronic Signatures.**  Any Party may execute this Agreement by facsimile or electronically (e.g., by DocuSign) for the purpose of executing this Agreement facsimile or each electronic signature shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Party whose counsel transmits the signature page by facsimile, email, or electronic signature.

**7.13.  Interim Stay in Litigation.**  Pending completion of all prerequisites necessary to effectuate this Agreement, the Parties agree, subject to Court approval, to stay all proceedings in the Litigation except such as are necessary to effectuate the Settlement.

DATED: 4-25, 2024        PLAINTIFF HAMMON PRATT,
                                         On behalf of Himself and the Opt-In Plaintiffs

                                         By: _____
                                                  Hammon Pratt

/s/ *[signature]*
Sean Short, AR Bar No. 2015079
Josh Sanford, AR Bar No. 2001037
Sanford Law Firm, PLLC
10800 Financial Centre Parkway, Suite 510
Little Rock, Arkansas 72211

ATTORNEYS FOR NAMED PLAINTIFF AND THE
OPT-IN PLAINTIFFS, as to Sections 4.5 and 7.10 Only

DATED: _____, 2024          SC REALTY SERVICES, INC.

By:_____
   David Harvey
   CEO/President


/s/ _____
James C. Sullivan, MO Bar # 38318
FISHER & PHILLIPS LLP
4622 Pennsylvania Ave., Suite 910
Kansas City, MO 64112

James M. Gary AR Bar No. 80051
KUTAK ROCK LLP
One Union National Plaza
124 West Capitol Ave., Suite 2000
Little Rock, Arkansas 72201

ATTORNEYS FOR DEFENDANT

Doc ID: 034463d18749fd3afebd3cf74dd6b7b03f78c01e

/s/ _____
Sean Short, AR Bar No. 2015079
Josh Sanford, AR Bar No. 2001037
Sanford Law Firm, PLLC
10800 Financial Centre Parkway, Suite 510
Little Rock, Arkansas 72211

ATTORNEYS FOR NAMED PLAINTIFF AND THE
OPT-IN PLAINTIFFS, as to Sections 4.5 and 7.10 Only

DATED: _____, 2024

SC REALTY SERVICES, INC.

By: _____
David Harvey
CEO/President

/s/ *James C. Sullivan*
James C. Sullivan, MO Bar # 38318
FISHER & PHILLIPS LLP
4622 Pennsylvania Ave., Suite 910
Kansas City, MO 64112

James M. Gary AR Bar No. 80051
KUTAK ROCK LLP
One Union National Plaza
124 West Capitol Ave., Suite 2000
Little Rock, Arkansas 72201

ATTORNEYS FOR DEFENDANT

# EXHIBIT 1

## DISTRIBUTION OF SETTLEMENT AWARDS AND SERVICE AWARD

A. The Settlement Awards to the Named Plaintiff and the Participating Opt-ins are as follows:

| Employee Name | Back Wages | Paid as 1099 Income | Total Award |
|---|---|---|---|
| Acevedo, Vanessa | $3.59 | $3.58 | $7.17 |
| Allen, Rebecca L | $19.16 | $19.16 | $38.32 |
| Bankston, Carla R | $2.21 | $2.20 | $4.41 |
| Brewer, Tanya R | $116.51 | $116.51 | $233.02 |
| Coleman, Edward L | $4.17 | $4.16 | $8.33 |
| Copeland, Frank | $14.00 | $14.00 | $28.00 |
| Davis, Layah F | $0.83 | $0.82 | $1.65 |
| Deshazo, Velisa | $3.42 | $3.41 | $6.83 |
| Garrido, Ana K | $15.76 | $15.76 | $31.52 |
| Gomez, Nancy Y | $13.20 | $13.20 | $26.40 |
| Gomez, William A | $37.40 | $37.40 | $74.80 |
| Graviet, Mersadies A | $10.25 | $10.25 | $20.50 |
| Llanas, Maricela | $577.89 | $577.89 | $1,155.78 |
| Mitchell, Juleene L | $70.04 | $70.04 | $140.08 |
| Morris, Robert J | $6.88 | $6.87 | $13.75 |
| Pence, Tabitha V | $30.07 | $ 0.06 | $60.13 |
| Pratt, Hamonn | $57.94 | $57.93 | $115.87 |
| Walker, Jennifer R | $601.06 | $601.06 | $1,202.12 |
| White, Kristen E | $78.88 | $78.87 | $157.75 |
| Wilson, Ryan | $38.14 | $38.13 | $76.27 |
| Total | | | **$3,402.70** |

B. The Service Award to the Named Plaintiff is anticipated to be $1,600.00, subject to Court approval.

Doc ID: 034463d18749fd3afebd3cf74dd6b7b03f78c01e